## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **GREG SELLARDS** | ) | Case No. 3-05CV-1182B |
| | ) | |
| **Plaintiff,** | ) | |
| ORIGINAL | ) | |
| vs. | ) | |
| | ) | |
| **SUN MEDICAL, INC., THE SUN** | ) | |
| **MEDICAL, INC. EMPLOYEE STOCK** | ) | |
| **OWNERSHIP PLAN, and THE** | ) | |
| **SUN MEDICAL, INC. SUPPLEMENTAL** | ) | |
| **EXECUTIVE RETIREMENT PLAN** | ) | |
| | ) | |
| **Defendants** | ) | |

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
     FILED
   AUG 2 6 2005
CLERK, U.S. DISTRICT COURT
By _____
            Deputy
```

### DEFENDANTS' ORIGINAL ANSWER AND COUNTERCLAIMS

Defendant Sun Medical, Inc. ("SMI"), The Sun Medical, Inc. Employee Stock Ownership

Plan ("ESOP"), and The Sun Medical, Inc. Supplemental Executive Retirement Plan ("SERP"),

(hereinafter collectively "Sun" or "Defendants" except where specifically referred to as SMI, the

ESOP, or the SERP) files this their Original Answer to Plaintiff's Original Complaint and

Counterclaims against plaintiff Greg Sellards.

### I.

### Admissions And Denials As To Original Complaint

1.     Defendants are without knowledge or information sufficient to form a belief as to the

allegations of paragraphs 1 and 2.

2.     Defendants admit the allegations of paragraph 3.

3.     Defendants are without knowledge or information sufficient to form a belief as to the

allegations of paragraphs 4, 5, 6, 7, 8, 9, and 10.

4.　　Defendants admit the allegations of paragraphs 11 and 12.

5.　　Defendants deny the allegations of paragraphs 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35.

II.

Factual Background

6.　　SMI is a Texas business corporation wholly owned by its employees by virtue of an ESOP established on January 1, 1984. As of January 2, 1992, the ESOP owned 100% of the issued and outstanding stock of SMI.

7.　　Sellards  was an SMI employee when he resigned as CEO of SMI on March 1, 2001. On March 15, 2001, Sellards signed a consulting fee agreement with SMI in which Sellards agreed that he "would not be considered as a direct employee effective March 16, 2001." This March 15, 2001 consulting fee agreement provided that Sellards would act as a consultant effective March 16, 2001, while continuing as chairman of the BOD of SMI and trustee of the ESOP.

8.　　On March 1, 2001, SMI's ESOP was governed by a plan that had been restated and in effect as of July 8, 1993. The pertinent parts of this plan pertaining to Sellard's employment status as a result of his resignation in March 2001 and the execution of the March 15, 2001 consulting fee agreement are as follows:

　　a. The ESOP defines an "employee" in Section 2, "Definitions", page 7, as follows:

"A person, employed by an Employer, any portion of whose income is subject to withholding of income tax and/or for whom social security contributions are made by an Employer, as well as any other person qualifying as a common law employee of an Employer ..."

b. The ESOP defines "break in service" in Section 2, "Definitions", page 4, as follows:

"A Plan Year during which a Participant has not completed more than 500 Hours of Service . . ."

c. The ESOP further states as to participation in the Plan, Section 4, <u>PARTICIPATION</u> <u>IN ALLOCATION OF BENEFITS</u>, (a) Participation, page 18, that ". . . a Participant will share in the allocation of Employer Contributions and Forfeitures only if the Participant is still employed on the last day of the Plan Year and has accumulated 1,000 or more Hours of Service during the Plan Year."

9.      SMI's financial condition had been strong when Sellards resigned in March 2001. SMI generated approximately 75% of its profits as a distributor for a company called Advanced Neuromodulation Systems, Inc. ("ANS"). This relationship was subject to expire in December 2003, and there was uncertainty whether ANS would renew the agreement. If ANS did not renew the agreement, the value of SMI stock would plummet. Sellards, who had the largest interest in SMI stock, would be the biggest loser. Accordingly, he decided to "take his profits" by selling substantially all of his interest in the ESOP and the SERP in 2002.

10.      SMI's tax reporting to the Internal Revenue Service for the services Sellards provided to SMI after March 15, 2001 reflected the parties' agreement that Sellards would be an <u>independent</u> <u>contractor</u>, not an employee, effective March 16, 2001. In 2001 SMI filed a W-2 for Sellards that reflected $58,129.33 for wages paid in 2001 and a form 1099-MISC for $91,667.00 that reflected independent contractor fees for services Sellards performed in 2001. Sellards concurred with the characterization of his services and the related tax treatment.

11.      SMI filed a 2002 form 1099-MISC with the IRS for $100,000 for Sellards' services as an

independent contractor. SMI filed a 2002 form W-2 with the IRS for $223,738, but the W-2 was solely for the SERP for deferred compensation accrued prior to 2002. In 2002 SMI also filed a form 1099-MISC for $284,086.48 that represented Sellard's total account balance in the ESOP as of December 31, 2001. Sellards again concurred with the characterization of his services and the related tax treatment.

12.     For 2003 SMI again filed a 2003 form 1099-MISC for Sellards' non-employee compensation as an independent contractor.

13.     In 2002, in order to trigger the payment of the distributions that represented Sellard's share of the ESOP and SERP referred to in paragraph 6 immediately above, Sellards made oral and written representations to SMI accounting personnel and SMI's ESOP administrator that he had complied with the requirements of the ESOP and SERP defining a break in service effective in March 2001 with his resignation as an employee of SMI. In July 2002, Sellards, as the sole ESOP trustee, knew that SMI personnel were reporting Sellards' break in service in March 2001 without accumulating 500 hours of service in the 2001 plan year to SMI's ESOP administrator. As a result of Sellards' active participation in the management of the ESOP and SERP, Sellards received the SERP and ESOP distributions referred to in paragraph 11 above. The effect of these distributions was that Sellards again acknowledged that, in accordance with the consulting fee agreement and the ESOP, he was an employee of SMI only until March 2001.

14.     The 2002 SERP and ESOP distributions served to substantially satisfy and extinguish the Defendants' ESOP and SERP financial obligations to Sellards. Sellards acknowledged that SMI's ESOP was acquiring substantially all of Sellards' outstanding stock (7,076.705 shares) by

virtue of a written statement that he signed on November 8, 2002.

15.    During the years 2001, 2002, and 2003, as in previous years, Sellards performed in a variety of capacities in which he owed fiduciary duties to Defendants. Sellards was chief executive officer of SMI from SMI's incorporation through March 15, 2001. Sellards was sole trustee of the ESOP from 1984 through September 27, 2003. Sellards was one of two people on the ESOP committee from 1984 until 2003. Sellards was chairman of the board of directors of SMI until he was replaced in May 2005. Sellards was one of two members of the SERP committee from March 11, 1996 to September 27, 2003.

16.    During the periods of time when Sellards had fiduciary duties to Defendants, he concurrently had an interest in a number of other business entities and ventures one of which engaged in transactions with SMI. This entity was Dual Development, a Texas general partnership in which Sellards was a 70% owner. Transactions between SMI and Dual Development created conflicts of interest for Sellards, and produced financial harm to SMI and the ESOP.

17.    In late 2002, Sellards, as SMI BOD chairman, became aware that ANS would not renew its distribution agreement with SMI. However, ANS was interested in acquiring SMI's pain management division if a deal could be worked out. Sellards realized that if SMI's sale of its division to ANS was completed, existing employees would reap the benefit. SMI sold the pain management division to ANS on March 12, 2003.

18.    Once this ANS sale was complete, Sellards contrived and initiated a scheme, scam, and course of conduct designed to show that he was still a common law employee of SMI and thereby

entitled to reap an undeserved financial windfall which only legitimate SMI employees were entitled to receive.

19.    Prior to the ANS transaction, Sellards had never claimed that SMI had made an incorrect determination of his independent contractor status for 2001 and 2002 for the purposes of tax reporting. He never claimed the 2002 SERP and ESOP distributions were incorrect until April 2, 2003, when he started claiming that he had actually been a common law employee since March 2001.

20.    In March 2001 SMI was leasing its business premises at 1179 Corporate Drive West, Suite 100, Arlington, Texas, from Dual Development, a partnership owned and controlled by Sellards. Sellards, as the CEO of SMI, had obligated SMI to pay an exorbitant rate of rent to Dual Development, by virtue of a five year lease signed September 1, 1998. On March 30, 2001, Sellards further utilized his position as BOD chairman of SMI to effectuate a contract for deed from Dual Development to SMI at a ruinous sale price greatly in excess of fair market value.

On April 26, 2004, while Sellards was still chairman of the board of SMI, and in a position to exploit inside information about SMI, and when he had a clear conflict of interest between his role in SMI versus his position in Dual Development, he caused Dual Development to sue SMI for alleged breach of contract.

21.    On March 11, 1996, SMI, by and through Sellards as its CEO, had adopted the SERP. Sellards was the only participant in the SERP. Sellards caused the SERP to be retroactive to January 1, 1992. The SERP provided benefits to no one other than Sellards.

III.

ORG ANSWER.wpd082605
C:\DOCS\SUN.MEDICAL\ORG.ANSWER.wpd

## Affirmative Defenses

22. <u>Accord and Satisfaction and Payment</u>. Defendants are not liable to Sellards because of an accord and satisfaction and payment, as a result of the actions described in paragraphs 11 and 14.

23. Plaintiff's Original Complaint does not state claims against defendants upon which relief can be granted.

24. The Original Complaint, in its entirety, does not state any facts upon which a claim of relief of attorney fees may be maintained against defendants.

25. Defendants are not liable to Sellards since Sellards is estopped by contract and in equity from prevailing on his claims. He is estopped by contract and in equity from any further recovery on his SERP and ESOP accounts for the reasons stated in paragraphs 7 and 8.

26. Defendants further affirmatively assert that Sellards was not a common law employee subsequent to March 15, 2001, for one or more of the following reasons:

    a.    Sellards was not required to follow instructions in performing his tasks. He was given certain goals to achieve, but he was not instructed on how to complete those goals.

    b.    Sellards did not require any training to complete the tasks assigned to him under the agreement.

    c.    The relationship between Sellards and Sun Medical was designed to taper off as the tasks Sellards was assigned were completed.

    d.    Sun Medical did not establish a set amount of work hours for Sellards. Rather, Sellards set his own hours and determined how much time he needed to spend on each task.

    e.    Sellards determined the sequence of the tasks he performed.

f.     Sun Medical and Sellards determined at the beginning of the consulting

relationship what tasks Sellards would complete and the amount of money appropriate to

compensate Sellards for completing those tasks.  The only payment arrangement towards the end

of the relationship indicated that Sun Medical and Sellards expected that Sellards would be

completing his tasks and that Sun Medical would only need to compensate Sellards for the hours

spent finishing particular projects.

IV.

Defendants' Counterclaims Against Sellards

Quantum Meruit

27.     At various times prior to the filing of his complaint, Sellards prevailed upon one of more

SMI employees who have specialized accounting and tax expertise to provide service to him and

entities he controlled or had an interest in.  SMI employees rendered services to Sellards for the

following entities controlled by Sellards, or in which he had an interest, and at the indicated

yearly rates and gross fair market value:

| Person/Entity | Annual Charges | FMV |
|---|---|---|
| Dual Development | 4 years @ $750/year | $3,000 |
| Greg Sellards | 4 years @ $700/year | 2,800 |
| Trinity City Mortgage Co. | 4 years @ $250/year | 1,000 |
| Hospital Waste Management | 1 year @ $400/year | 400 |
| JKG Enterprises/Rhino Linings | 4 years @ $200/year | 800 |
| Wintergreen | 2 years @ $750/year | 1,500 |
| Triway Investments | 4 years @ $250/year | 1,000 |

ORG.ANSWER.wpd082605
C:\DOCS\SUN MEDICAL\ORG.ANSWER.wpd

TOTAL                                                                    $10,500

28.     As a direct result of SMI's rendition of the services, benefits were conferred on Sellards

in that Sellards benefitted from the accounting and tax services described above.

29.     Sellards accepted the benefit of the services performed.

30.     The reasonable value of the services that SMI, by and through its employees, provided to

Sellards was as indicated above, consisting of the gross fair market value of $10,500 for services

provided.  SMI reasonably expected payments for the services provided to Sellards.

31.     In 2003, SMI presented the claim as described above to Sellards for payment.  As of the

filing of this counter-claim, payment for the just amount owed has not been tendered.  As a result

of Sellards' failure to pay the claim, SMI has been required to retain the undersigned attorney to

bring this counter-claim.  SMI is entitled to recover its attorney's fees under the Texas Civil

Practice and Remedies Code § 38.001 and following.

32.     Sellards will be unjustly enriched in the amount claimed by SMI if allowed to retain the

benefits conferred on him without payment for the reasonable value of the services provided by

SMI to Sellards described above.

Breach of Fiduciary Duty - Federal and State Causes of Action

33.     During the years 2001 through 2003, Sellards was a "party in interest" as that term is

defined in 29 U.S.C. § 1002(14).  Sellards was also a "fiduciary" as that term is defined in 29

U.S.C. § 1002(21) and whose duties are described in 29 U.S.C. § 1104.  Sellards is also a

fiduciary as that term is defined under Texas common law.

Breaches of 29 U.S.C. §§ 1104 and 1106

34.     Sellards, as the ESOP trustee, violated the prudent man standard of care applicable to a

fiduciary by discharging his duties with respect to the ESOP for purposes other than providing

benefits to ESOP participants and their beneficiaries.  The establishment of the SERP in 1996,

with a false claim that the SERP was retroactive to January 1, 1992, was highly disadvantageous

to SMI, which was required to fund the SERP for the sole benefit of Sellards.  Sellards should be

ordered to disgorge and return all SERP consideration to SMI.

35.     29 U.S.C. § 1106(a) prohibits, among other things that a fiduciary shall not cause the plan

to engage in a transaction, if he knows or should know that such a transaction constitutes a direct

or indirect transfer to, or use by for the benefit of a party in interest, of any assets of the plan.

When Sellards, in his role as trustee of the ESOP, established the SERP in 1996, Sellards was the

only beneficiary of said SERP.  SMI and ESOP suffered substantial damage when they were

required to make the payment of $223,738.00 to Sellards as a compensation expense in 2002.

36.     Sellards violated 29 U.S.C. § 1106 by virtue of the lease and contract for deed

transactions referred to in paragraph 20 above and the establishment and operation of the SERP

referred to in paragraph 34 as to both the ESOP and SMI.

37.     The ESOP and SMI are  entitled to bring these counterclaims in accordance with 29

U.S.C. § 1132, and are entitled to recover their attorney's fees under 29 U.S.C. § 1132(g)(1).

Breach of Texas Common Law as to Fiduciary Duties

38.     Corporate officers and directors owe a strict fiduciary obligation to their corporation.  The

fiduciary status of a corporate officer and directors involves the duties of obedience, loyalty, and

care.  The duty of loyalty dictates that a corporate officer must act in good faith and must not

allow his personal interest to prevail over the interest of the corporation. The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on the part of the officer or director.

39.     An officer or director is considered "interested" if he makes a personal profit from a transaction by dealing with the corporation, or transacts business in his officer's or director's capacity with a second business entity in which he is also an officer of director or is significantly financially associated.

40.     Sellards has violated his fiduciary duties by virtue of the transactions described in paragraph 20 above. As a result of Sellards using his position as the chairman of the board and chief executive officer of SMI to lease and then buy the office building from a partnership he controlled, Sellards caused substantial harm to the ESOP.

41.     The Sun ESOP brings these counterclaims for breaches of fiduciary duty to recover its damages resulting from SMI's transactions with Dual Development, including restitution by Sellards of all profits that he realized as the result of Dual Development's recovery from SMI through litigation. SMI and the ESOP also brings counterclaims against Sellards for transactions involving the SERP referred to above.

## V.

### Prayer

42.     Defendants pray that plaintiff takes nothing by reason of his Original Complaint, dismiss plaintiff's suit with prejudice, defendants be awarded their costs of suit and attorney's fees incurred herein and such other relief as the Court deems just and appropriate.

ORG.ANSWER.wpd082605
C:\DOCS\SUN.MEDICAL\ORG.ANSWER.wpd

43. As to their counter-claims, SMI and the SMI ESOP request that the Court grant judgment in the full amounts of the general damages determined by the trier of fact, attorney's fees, pre-and post-judgment interest, and court costs.

Respectfully submitted,

James D. Runzheimer
2405 Garden Park Court, Suite A
Arlington, Texas 76013
Telephone:    (817) 795-2020
Facsimile:    (817) 795-2063
E-mail: runz-law@swbell.net
State Bar No. 17398200
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on Greg Sellards, by and through his attorneys, Wright & Gunter, LLP, Robert L. Wright, Adrienne W. Gunter, 612 Eighth Avenue, Fort Worth, Texas 76104, in accordance with the Federal Rules of Civil Procedure on August 26, 2005 by certified mail and by facsimile.

James D. Runzheimer
Attorney for Defendants